KELLY E. DUFORD, State Bar No. 295646
*kedwilliams@slatelawgroup.com*
CHRISTINE A. ROBLES, State Bar No. 307309
*crobles@slatelawgroup.com*
SLATE LAW GROUP
2131 Third Ave
San Diego, CA 92101
Ph: (619) 565-5077
Fax: (619) 354-2449

Attorneys for Plaintiff
BRIANNA CARROLL

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA CARROLL, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>BELMONT PARK ENTERTAINMENT LLC, A Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>       Defendants. | Case No.: **'20CV1991 H    RBB**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **Pregnancy Discrimination – Title VII Violation [42 U.S.C. § 2000e]**<br>2. **Pregnancy Discrimination – FEHA Violation [Cal. Gov't Code § 12940]**<br>3. **Failure to Prevent Discrimination – FEHA Violation [Cal. Gov't Code § 12940]**<br>4. **Wrongful Termination in Violation of Public Policy**<br>5. **Unfair Business Practices – Violation of Cal. Bus. & Prof. § 17200**<br>6. **Intentional Infliction of Emotional Distress**<br>7. **Negligent Infliction of Emotional Distress**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BRIANNA CARROLL ("Plaintiff" or "Ms. Carroll"), by and through her attorneys of record, Slate Law Group, hereby asserts claims against Defendant BELMONT PARK ENTERTAINMENT LLC, a limited liability company ("Defendant" or "Belmont Park"); and DOES 1 through 100, inclusive (hereinafter collectively referred to as "Defendants"), for Plaintiff's Complaint and Jury Demand:

## PRELIMINARY STATEMENT

1.     As Ms. Carroll's employer, Defendant subjected Ms. Carroll to pregnancy discrimination and terminated her employment in violation of public policy.

2.     Ms. Carroll brings this action against Defendant for pregnancy discrimination, failure to prevent discrimination, wrongful termination, intentional infliction of emotional distress, and negligent infliction of emotional distress based on Defendant's termination of Ms. Carroll's employment due to her pregnancy.

3.     This action seeks monetary damages to redress Defendant's violations of California and Federal law.

## PARTIES

4.     Plaintiff BRIANNA CARROLL is, and at all times relevant to this Complaint was, an individual residing in the County of San Diego, State of California.

5.     Defendant BELMONT PARK ENTERTAINMENT LLC is, and at all times relevant to this Complaint was, a LIMITED LIABILITY COMPANY operating in and headquartered in California and formed under the laws of the State of Delaware.

6.     Defendant Belmont Park is, and at all times relevant to this Complaint was, an "employer" as defined within and subject to the California Fair Employment and Housing Act ("FEHA") at California Government Code §§ 12900 *et seq.*, in that it regularly employs five (5) or more persons.

7.      Defendant Belmont Park is, and at all times relevant to this Complaint was, an "employer" as defined within and subject to the Title VII Civil Rights Act of 1964 in that it regularly employs fifteen (15) or more persons. 42 U.S.C. § 2000e(b).

8.      DOES 1 through 100, inclusive, are fictitious names of defendants sued herein under California Code of Civil Procedure § 474. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants. Plaintiff will seek leave of Court to amend this Complaint to set forth the true names and capacities of such defendants when they are ascertained by Plaintiff.

9.      Plaintiff is informed and believes, and thereon alleges, that each defendant named in this Complaint, including DOES 1 through DOES 100, at all times relevant to this Complaint, was the agent, employee, and/or representative of Defendant, acting within the course and scope of that relationship and/or capacity of Defendant.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to the U.S. Constitution, Article III and 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, and their applicable regulations described in this Complaint.

11.      Plaintiff's state law claims have a common nucleus of applicable facts and are so related to those under which this Court has original jurisdiction that they form part of the same case or controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.      This Court has personal jurisdiction over Defendant because all acts or omissions by Defendant, as well as Plaintiff's injuries arising from those acts or omissions, occurred in the County of San Diego, within the state of California,

establishing Defendant's minimum contacts with the state of California such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the state of California, and at the time of the events giving rise to this litigation, all of the parties resided in California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Prior to commencing this civil action, and within the time provided by law, Ms. Carroll filed administrative charges with the Equal Opportunity Commission ("EEOC") and the California Department of Fair Employment and Housing ("DFEH").

15. On September 23, 2020, Ms. Carroll requested a "Right-to-Sue" letter from the EEOC regarding Ms. Carroll's federal claims.

16. On October 1, 2020, Ms. Carroll received a "Right-to-Sue" letter from the EEOC regarding Ms. Carroll's federal claims. A true and accurate copy of the EEOC Right-to-Sue letter is attached hereto and incorporated by reference as **Exhibit A**.

17. On September 23, 2020, Ms. Carroll requested and received a "Right-to-Sue" letter from the DFEH regarding Plaintiff's state law claims. A true and accurate copy of the DFEH Right-to-Sue letter is attached hereto and incorporated by reference as **Exhibit B**.

18. Ms. Carroll has satisfied all private, administrative, and judicial prerequisites to the commencement of this civil action, and is not required to satisfy any further private, administrative, and judicial prerequisites, insofar as such prerequisites pertain to any of the remaining causes of action in this Complaint.

## FACTUAL BACKGROUND

## Ms. Carroll's Employment with Defendant Belmont Park

19. On April 28, 2014, Ms. Carroll began her employment with Belmont

Park as the Food & Beverage Manager at Belmont Park's Draft Restaurant.

20.     Ms. Carroll worked diligently as part of the Belmont Park team and exhibited her commitment to Belmont Park's growth, development, and overall success through six (6) years of service as an employee.

21.     Throughout her time at Belmont Park, Ms. Carroll was a model employee.

22.     Ms. Carroll received zero write-ups or other disciplinary actions, and her performance reviews were all positive.

23.     In September 2014, Belmont Park acknowledged Ms. Carroll's success and rewarded her efforts by promoting her to Events Manager to manage the lucrative Private Events Department for Belmont Park, effective September 15, 2014.

24.     Ms. Carroll's title was changed to Director of Event Sales in 2016.

25.     In her role as Director of Sales, Ms. Carroll managed all contracts and all private events held at Belmont Park.

26.     Ms. Carroll oversaw Belmont Entertainment's Private Events Department with two full-time salespeople, a banquet staff department, a banquet captain, and an administrative office assistant.

27.     Ms. Carroll's duties included overseeing the goals and budgeting of the Private Events Department, training sales managers, creating and implementing operating procedures, managing outside and inside sales, managing the website, and handling client relationships.

28.     Of the revenue generated specifically within the Events Department for the 2018-2019 year, Ms. Carroll was personally responsible for 65-75% of revenue generated, including the accounts she opened, events she executed, and sales she closed.

29.     In November 2019, Ms. Carroll contracted and executed the single largest revenue generating event in the history of Defendant Belmont Park.

30.     Ms. Carroll became pregnant in September of 2019.

31.     Ms. Carroll informed her employer of her pregnancy in January 2020, when she officially was out of the first trimester.

32.     The week Ms. Carroll informed her workplace about her pregnancy, Belmont Park's General Manager, Steve Thomas, made a joke to her that he was going to stop hiring women because they are all getting pregnant.

33.     Steve Thomas, at lunch with Ms. Carroll, communicated that Ms. Carroll must have intentionally kept her pregnancy hidden before her performance review in the previous month.

34.     Despite her pregnancy and the comments from her manger, Ms. Carroll continued to perform all her job duties with the same work ethic and success as she had in previous years.

35.     At no point did Ms. Carroll's job performance suffer as a result of her pregnancy, as she continued her record of zero disciplinary actions or negative notes in her employee file.

36.     Since 2014, Ms. Carroll always had mostly exceptional job performance reviews and never has had an "unsatisfactory" performance review.

**<u>Onset of COVID-19 Pandemic</u>**

37.     On or around the beginning and middle of March 2020, the United States felt the beginning effects of the COVID-19 pandemic.

38.     Through different times from mid-March to the present, Federal, State, and local governments initiated mandated business closures, stay-at-home or shelter-in-place orders, and other regulations to slow the spread of the COVID-19 virus.

39.     Due to these pandemic-related government-mandated closures, many businesses experienced financial difficulties.

40.     On March 16, 2020, Belmont Park made salary cuts in order for it to maintain staffing at the then-current operating levels.

41.   Ms. Carroll was one of the individuals who received a salary cut, which she accepted and recognized as a necessary measure executed by Belmont Park in an effort to retain its employees during the pandemic.

42.   In or around March 2020, Steve Thomas asked Ms. Carroll if it was possible for her to take her maternity disability leave early.

43.   Steve Thomas stated to Ms. Carroll that Belmont Park did not want to have to keep Ms. Carroll on payroll.

44.   Ms. Carroll informed Steve Thomas that she could only take her disability leave once she had her baby or if there was a medical reason.

45.   Further, Ms. Carroll told Steve Thomas that if she took her maternity leave early, then she would be using up all her personal maternity leave prior to the birth of her child.

46.   If Ms. Carroll had taken the advice of Steve Thomas, then she would have been left with no maternity leave after her baby was born.

47.   Ms. Carroll agreed to the salary pay cut instead of taking maternity leave early.

48.   On April 9, 2020, as a subsequent step in navigating the COVID-19 situation, Belmont Park furloughed its employees, including Ms. Carroll and her entire department.

49.   Employees were temporarily relieved of their duties and sent home with the general understanding that they would be returning to their jobs at the end of the furlough.

50.   From this furlough date on April 9, 2020, Ms. Carroll was in text-message communication with agents of Belmont Park, including Belmont Park's General Manager, Steve Thomas, regarding the events and team management in the coming months.

51.   Belmont Park agents indicated that the circumstances of COVID-19 could affect some future staffing decisions, and Ms. Carroll was even involved in

facilitating some staff cutbacks.

52.     Ms. Carroll was informed her position was to be continued due to Belmont Park agents' multiple references to returning to work and to the 2021 event schedule.

53.     All aspects of these communications referenced or relied on the understanding that Ms. Carroll would continue to be employed by Belmont Park and perform the duties of the Director of Sales.

54.     During the furlough, Belmont Park requested that Ms. Carroll create a working document outlining the duties of her role as Director of Sales for the Private Events Department.

55.     This document was to include information on Ms. Carroll's duties, mechanisms for accomplishing such duties, the current status of existing event contracts, and all general aspects of her employment as the Director of Sales for Belmont Park's Private Events Department.

56.     This request was made by Belmont Park for the express and specific reason that it would be given to her temporary replacement in order for him to carry out Ms. Carroll's role while she was on maternity leave.

57.     At the time, Ms. Carroll understood that the then-current Director of Food and Beverage was the individual who would be covering Ms. Carroll's role during her maternity leave.

58.     Again, at this stage in its communications with Ms. Carroll, Belmont Park expressed that the duties associated with her role were to be ongoing.

59.     At no point in the discussion of this document did Belmont Park indicate that it was planning to effectively close the Private Events Department.

60.     On May 1, 2020, Belmont Park brought many of its employees back to work from furlough, including Ms. Carroll.

61.     Belmont Park's decision to bring back its employees was prompted by its receipt of Paycheck Protection Program ("PPP") loan funds from the

government's COVID-19 pandemic relief measures.

62.   Belmont Park was required to use the PPP funds within eight weeks of receipt per the relief fund terms.

63.   Ms. Carroll was willing and able to return to work and she did so.

64.   Given the government recommendation to work from home if possible, Ms. Carroll opted to work from home.

65.   Nonetheless, Ms. Carroll illustrated superb work ethic and loyalty in her return to work.

66.   During this time, Ms. Carroll continued as Director of Sales and executed her duties as such.

67.   All interactions with Belmont Park agents and external third parties, individuals and businesses contracting with Belmont Park for events, pointed to the clear understanding that the Private Events Department was continuing with Belmont Park after COVID-19.

## Termination of Ms. Carroll's Employment from Belmont Park

68.   On May 19, 2020 Belmont Park's General Manager and Ms. Carroll's direct supervisor, Steve Thomas, sent a text message to Ms. Carroll asking if she had "a few minutes to talk."

69.   Ms. Carroll responded that she did have a few minutes to talk.

70.   Ms. Carroll took the call with Steve Thomas expecting to discuss logistics of her maternity leave and/or the management of the Private Events Department staff and future events.

71.   However, during this conversation, Steve Thomas informed Ms. Carroll that she was being terminated from her position with Belmont Park.

72.   Steve Thomas communicated that her termination was due to Belmont Park's decision to dissolve the Private Events Department.

73.   At no point during this telephone conversation did Steve Thomas reference COVID-19 or suggest that COVID-19 was the reason she was being

terminated.

74.    However, when sending Ms. Carroll her final paychecks, Belmont Park included a letter indicating that she was being terminated due to the COVID-19 pandemic.

75.    Ms. Carroll was thirty-eight weeks pregnant when Belmont Park terminated her employment.

76.    Having been terminated right before she was due to give birth, Ms. Carroll was suddenly faced with uncertainty regarding the status of her health insurance, the status of her maternity leave, and what this meant for her and her soon to be born child.

77.    To make matters worse, Ms. Carroll had to deal with these employment and health insurance issues during a time when there were already significant global health concerns due to the COVID-19 pandemic.

78.    After the call between Steve Thomas and Ms. Carroll, Belmont Park provided Ms. Carroll a termination letter, which referenced COBRA benefits being available for continued health insurance.

79.    However, Belmont Park did not provide additional information regarding how or when such COBRA benefits would go into effect for her.

80.    Ms. Carroll understandably requested additional information regarding the continuation of her health insurance through the COBRA program, as she needed to ensure she was covered when she gave birth.

81.    Despite the urgency, Belmont Park's Human Resources ("HR") personnel informed Ms. Carroll that Belmont Park was unable to provide her the requested information or otherwise guide her with adequate information regarding COBRA benefits.

82.    Then, HR advised Ms. Carroll to contact the State Disability Department for answers to her questions regarding COBRA benefits.

83.    Ms. Carroll's attorneys had to follow up with Belmont Park to ensure

that it provided the COBRA documents to her.

84.    Belmont Park finally provided Ms. Carroll with COBRA paperwork on June 3, 2020.

85.    Ms. Carroll gave birth on June 5, 2020, a mere two days after receiving COBRA paperwork from Belmont Park.

86.    Belmont Park has since transferred the roles and duties Ms. Carroll previously carried out to another Director within the company and one of the Event Managers whose employment was not terminated.

87.    Belmont Park did not in fact eliminate Ms. Carroll's department, the Private Events Department.

88.    Further, Belmont Park did not terminate Ms. Carroll's employment due to the COVID-19 pandemic.

89.    In reality, Belmont Park continued to advertise events following Ms. Carroll's termination on social media A true and accurate copy of such advertisement is attached hereto and incorporated by reference as **Exhibit C**.

90.    Another event manager who worked strictly for the amusement park side of Belmont Park's operations, was offered a position with the Private Events Department.

91.    That event manager only declined a position with the Private Events Department because she decided to not except a hybrid job offer of managing both food and beverage duties and events duties combined.

92.    Additionally, Belmont Park transferred Ms. Carroll's two prior full-time sales employees to other departments, wherein one was transferred to the Administrative Department and the other was transferred to the Food and Beverage Department.

93.    Belmont Park did not offer Ms. Carroll the same accommodation of transferring to another department.

94.    Ms. Carroll was not given any options to continue her employment

with Belmont Park.

95.    Ms. Carroll was never offered a hybrid or entry level position with Belmont Park, unlike other employees.

96.    Belmont Park used the guise of the COVID-19 pandemic to avoid keeping Ms. Carroll as an employee.

97.    Belmont Park deliberately decided not to keep Ms. Carroll as an employee due to her pregnancy and her then-impending legally protected maternity leave.

98.    Belmont Park also intentionally renamed positions and departments in veiled attempts to justify terminating Ms. Carroll's employment just as she was about to give birth.

99.    Ms. Carroll's termination caused her extreme and severe emotional distress.

100.    Ms. Carroll was completely blindsided after six years of excellent reviews and loyal service as an employee for Belmont Park.

101.    Moreover, Belmont Park made a conscious decision to terminate Ms. Carroll's employment just days away from her due date and gave no regard to her mental health or wellbeing.

102.    In the wake of her termination, Ms. Carroll was left wondering if she would qualify for her disability benefits, paid family leave, or insurance.

103.    Upon her termination, Ms. Carroll's circle of friends and her own sense of support was gone in a matter of days, as she did not have family in San Diego to help her through this process.

104.    The days leading up to Ms. Carroll's birth should have been calm, stress free, and filled with excitement for a newborn.

105.    Instead, Ms. Carroll experienced days of stress and negativity as a result of Belmont Park's wrongful termination of her employment.

///

1

2

3

4

**FIRST CAUSE OF ACTION**

**Pregnancy Discrimination – Title VII Violation**

**(42 U.S.C. § 2000e)**

**(Against All Defendants)**

5   106.   Plaintiff hereby repeats, re-alleges, and incorporates herein by

6   reference each and every allegation in the preceding and subsequent paragraphs in

7   this Complaint.

8   107.   Plaintiff is a member of a protected class falling under the amendment

9   to and protections of Title VII, as she was pregnant at the time of her termination

10   of employment from Belmont Park.

11   108.   Ms. Carroll was qualified for her position and continuously and

12   satisfactorily performed her duties during the course of her employment.

13   109.   Ms. Carroll did not receive a single negative comment in her

14   performance file during her six (6) years of employment with Defendant. This is

15   further evidenced by Plaintiff's promotion to Director of Event Sales.

16   110.   As described above, Plaintiff was terminated from her position orally

17   on May 19, 2020. Subsequently she received a termination letter.

18   111.   While COVID-19 did, and continues to, present unique circumstances

19   to businesses, Defendant and its agents indicated to Ms. Carroll that her work

20   would continue following Belmont Park's return to normal operations.

21   112.   After Defendant terminated Ms. Carroll's employment, Belmont Park

22   hired a new employee under a new title performing very similar duties to her.

23   113.   Defendant maintained employment for employees in other events-

24   focused management positions.

25   114.   Prior to Ms. Carroll's termination, Defendant expressly indicated the

26   continuing operation of Plaintiff's position and department.

27   115.   Nonetheless, Defendant chose to terminate Ms. Carroll's employment

28   with Belmont Park due to her pregnancy status and her impending legally entitled

maternity leave.

116.   As a direct, foreseeable, and proximate result of Defendant's discriminatory conduct as described above, Plaintiff has incurred and will continue to incur general and special damages, the full extent of which are uncertain at this time, but which are within the jurisdiction of this Court to determine in a sum according to proof at trial.

**SECOND CAUSE OF ACTION**

**Pregnancy Discrimination – FEHA Violation**

**(Cal. Gov't Code § 12940)**

**(Against All Defendants)**

117.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

118.   As described above, Plaintiff is a member of a protected class falling under the protection of FEHA, as she was pregnant at the time of her termination from employment with Belmont Park. Cal. Gov't Code § 12940(a).

119.   Ms. Carroll was qualified for her position and continuously satisfactorily performed her duties during the course of her employment.

120.   Ms. Carroll did not receive a single negative comment in her performance file during her six (6) years of employment with Defendant. This is further evidenced by Plaintiff's promotion to Director of Event Sales.

121.   As described above Plaintiff was terminated from her position orally on May 19, 2020. Subsequently she received a termination letter.

122.   While COVID-19 did, and continues to, present unique circumstances to businesses, Defendant and its agents indicated to Ms. Carroll that her work would continue following Belmont Park's return to normal operations.

123.   After Defendant terminated Ms. Carroll's employment, Defendant hired a new employee under a new title performing very similar duties to her.

124. Defendant maintained employment for employees in other events-focused management positions.

125. Prior to Ms. Carroll's termination, Belmont Park expressly indicated the continuing operation of Plaintiff's position and department.

126. Nonetheless, Defendant chose to terminate Ms. Carroll's employment with Belmont Park due to her pregnancy status and her impending legally entitled maternity leave.

127. As a direct, foreseeable, and proximate result of Defendant's discriminatory conduct as described above, Plaintiff has incurred and will continue to incur general and special damages, the full extent of which are uncertain at this time, but which are within the jurisdiction of this Court to determine in a sum according to proof at trial.

## THIRD CAUSE OF ACTION

**Failure to Prevent Discrimination – FEHA Violation**

**(Cal. Gov't Code § 12940)**

**(Against All Defendants)**

128. Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

129. FEHA provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination from occurring in the workplace. Cal. Gov't Code § 12940(k).

130. Defendant had a duty to take all reasonable steps to prevent discrimination, harassment, and retaliation from occurring in the workplace.

131. Defendant failed to take reasonable steps necessary to prevent discrimination, harassment, and retaliation against Plaintiff by engaging in conduct including, but not limited to, the following:

    a. Failing to prevent Plaintiff's managers from discriminating against

her for being pregnant while maintaining other event positions.

    b.  Ratifying sex discrimination by terminating Plaintiff while she was pregnant.

    c.  Failing to ensure compliance with federal and state anti-discrimination law.

132.  Plaintiff was harmed by Defendant's failure to take all reasonable steps necessary to prevent discrimination against Plaintiff.

133.  Plaintiff is informed, believes, and thereon alleges that Defendants' conduct was ratified by Defendant's officers, directors, and managing agents.

134.  As a direct and legal result of Defendant's conduct, Plaintiff has incurred and will continue to incur general and special damages, the full extent of which are uncertain at this time, but which are within the jurisdiction of this Court to determine in a sum according to proof at trial.

135.  Plaintiff is informed, believes, and thereon alleges that Defendant and its supervisors, managers, and/or human resources personnel committed the acts and omissions alleged herein maliciously, fraudulently, and oppressively, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish and make an example of Defendants.

136.  As a direct and legal result of Defendant's unlawful conduct, as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided by FEHA, California Government Code § 12965(b).

137.  Plaintiff is also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## FOURTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (Against All Defendants)

138.  Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in

this Complaint.

139.   Prior to her termination and at all times relevant to this Complaint, Plaintiff was in an Employer-Employee relationship with Defendant.

140.   Plaintiff was an employee for Defendant for six (6) years in two different positions.

141.   As described above, Plaintiff's performance of her duties was exemplary, as evidenced by her flawless employment record and her promotion.

142.   Defendant terminated Plaintiff's employment on May 19, 2020.

143.   California Government Code § 12940 provides the statutory basis for an employee's claims for wrongful termination due to pregnancy.

144.   Employers discriminating against pregnant women is one of the precise harms the FEHA is designed to prohibit. In this case, Plaintiff was a pregnant woman for the relevant period of time to this Complaint.

145.   Plaintiff was terminated solely because she was pregnant despite being told it was due to the COVID-19 pandemic.

146.   Plaintiff is informed and believes and thereon alleges that Defendant engaged in willful, malicious, intentionally oppressive, and despicable conduct, and acted with willful and conscious disregard of Plaintiff's rights, welfare and safety in the workplace, thereby justifying the award of punitive and exemplary damages against Defendant in an amount to be determined at trial.

147.   The conduct of Defendant in terminating Plaintiff is contrary to the interests of the state and public policy, as embodied in the following laws, statutes, and regulations, among others: California Constitution Article I § 8 and all federal and state statutes and regulations prohibiting retaliation in the workplace, including, *inter alia*, Title VII, 42 U.S.C. §§ 2000e, *et seq.* and FEHA, California Government Code §§ 12940, *et seq.*

148.   As a direct and proximate result of Defendant's willful, knowing, and intentional harassment and discrimination, which resulted in Plaintiff's ultimate

termination from employment with Defendant, Plaintiff has sustained substantial losses of earnings and other employment benefits, the full extent of which are uncertain at this time, but which are within the jurisdiction of this Court to determine in a sum according to proof at trial.

149.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Code of Civil Procedure § 1021.5 and § 1032, Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at trial.

<u>**FIFTH CAUSE OF ACTION**</u>

**Unfair Business Practices**

**(Cal. Bus. & Prof. §§ 17200)**

**(Against All Defendants)**

150.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

151.   California Business and Professions Code §§ 17200, *et seq*., prohibits acts of unfair competition, which means and includes any "fraudulent act or practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of California Business and Professions Code §§ 17200, *et seq*.

152.   As described hereinabove, the acts, omissions, and discriminatory practices of Defendant and its representatives and agents alleged herein constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code §§ 17200, *et seq*.

153.   Specifically, without limitation, Defendant's unfair business practices included misrepresenting to Plaintiff that her position with Defendant would continue following the COVID-19 pandemic, terminating Plaintiff's employment due to her pregnancy, and hiring a new employee to fill the same or similar roles Plaintiff was performing.

154.   Defendant's directed discrimination toward Plaintiff, but not other events-based management personnel, also constitutes unfair business practices.

155.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant and its representatives and agents as alleged in this Complaint caused substantial harm to Plaintiff.

156.   As a direct and proximate result of Defendant's unfair business practices which resulted in Plaintiff's ultimate termination from employment with Defendant, Plaintiff has sustained substantial losses of earnings and other employment benefits, the full extent of which are uncertain at this time, but which are within the jurisdiction of this Court to determine in a sum according to proof at trial.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

157.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

158.   Defendant's termination of Plaintiff's employment as described in this Complaint, and the resulting cessation of her health insurance and other benefits, exposed Plaintiff to extreme and outrageous conduct by the Defendant.

159.   Defendant's intentional termination of Plaintiff as detailed hereinabove was so extreme and outrageous that no reasonable pregnant person should be subject to endure it and suffer the resulting harm as Plaintiff suffered and continues to suffer.

160.   As a result of the acts and omissions by Defendant, as alleged in this Complaint, Plaintiff began suffering from symptoms of severe emotional distress including, but not limited to, stress, anxiety, and panic, the onset of which occurred only after enduring Defendant's extreme and outrageous conduct.

161.   Defendant exhibited reckless behavior in its utter disregard for Plaintiff's well-being by terminating her employment mere days before she was due to give birth.

162.   Plaintiff is informed, believes, and thereon alleges that Defendant's conduct was ratified by Defendant's officers, managing agents, and/or its supervisors.

163.   As a direct, foreseeable, and proximate result of Defendants' egregious conduct as described above, Plaintiff has suffered and continues to suffer, among others, humiliation, severe physical and emotional distress, loss of reputation, and mental pain and anguish, all to her damage in a sum to be established according to proof at trial.

164.   As a further legal result of the acts and omissions of Defendants, Plaintiff may be forced to incur substantial expenses for medical and/or psychological care in an amount which is presently unknown and to be determined in a sum according to proof at trial.

## SEVENTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

165.   Plaintiff hereby repeats, re-alleges, and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs in this Complaint.

166.   As set forth above, Defendant had a duty to exercise reasonable care and prudence to provide Plaintiff with a safe, healthful, and non-retaliatory workplace environment.

167.   In carrying out the above-described conduct, Defendant breached the duty of due care it owed to Plaintiff.

168.   Defendant's conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace.

169.   Defendant, by and through its employees, terminated Plaintiff's employment mere days before she gave birth.

170.   Defendant knew, or should have known, that the above-described conduct would cause Plaintiff severe emotional distress.

171.   Plaintiff is informed, believes, and thereon alleges that Defendant's conduct was ratified by its officers, directors, and managing agents.

172.   As a result of the negligent termination permitted by Defendant, Plaintiff suffered from severe emotional distress via experiencing stress and anxiety.

173.   As a direct, foreseeable, and proximate result of Defendant's negligent conduct as described above, Plaintiff has suffered and continues to suffer, among others, humiliation, severe physical and emotional distress, loss of reputation, and mental pain and anguish, all to her damage in a sum to be established according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief and judgment against Defendant as follows:

1.   For general and compensatory damages in an amount according to proof at trial;

2.   For special damages in an amount according to proof at trial;

3.   For punitive damages to punish, deter and make an example of Defendants;

4.   For costs of litigation incurred herein;

5.   For attorneys' fees and costs pursuant to statute; and

6.   For such other and further relief as this Court deems proper and just under all the circumstances.

Dated October 9, 2020                    Respectfully submitted:

                                        SLATE LAW GROUP

                                        By: /s/*Kelly E. DuFord*
                                        KELLY E. DUFORD
                                        CHRISTINE A. ROBLES
                                        Attorneys for Plaintiff
                                        BRIANNA CARROLL

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all claims so triable in this case.

Dated: October 9, 2020

                                        Respectfully submitted:

                                        SLATE LAW GROUP

                                        By: /s/*Kelly E. DuFord*
                                        KELLY E. DUFORD
                                        CHRISTINE A. ROBLES
                                        Attorneys for Plaintiff
                                        BRIANNA CARROLL