UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA CARROLL, an individual<br><br>Plaintiff,<br><br>v.<br><br>BELMONT PARK ENTERTAINMENT LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  20-cv-01991-H-RBB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 4.] |

On November 24, 2020, Defendant Belmont Park Entertainment LLC filed a motion to compel arbitration of Plaintiff Brianna Carroll's claims and to stay the action.  (Doc. No. 4.)  On December 14, 2020, the Court took the matter under submission.  (Doc. No. 7.)  On December 21, 2020, Plaintiff filed a response in opposition to Defendant's motion.  (Doc. No. 8.)  On December 24, 2020, Defendant filed a reply.  (Doc. No. 9.)  For the reasons below, the Court grants Defendant's motion to compel arbitration of Plaintiff's claims.

## Background

The following factual background is taken from the allegations in Plaintiff's complaint.  Defendant is a Delaware limited liability company and is an operator of food services at Belmont Park, a beachfront park located in San Diego, California.  (Doc. No.

1, Compl. ¶ 5; Doc. No. 4-2, De Luca Decl. ¶ 2.)  On April 28, 2014, Plaintiff began her employment with Defendant as the Food and Beverage Manager at Belmont Park's Draft Restaurant.  (Doc. No. 1, Compl. ¶ 19.)  Eventually, Plaintiff was promoted by Defendant to the position of Events Manager and her title was later changed to Director of Events Sales.  (Id. ¶¶ 23-24.)

Plaintiff became pregnant in September 2019, and she informed her employer of her pregnancy in January 2020.  (Id. ¶¶ 31-32.)  On or around March 2020, the United States began feeling the effects of the COVID-19 pandemic.  (Id. ¶ 37.)  On March 16, 2020, Defendant made salary cuts, including to Plaintiff's salary.  (Id. ¶¶ 40-41, 47.)  Plaintiff accepted the salary cut and recognized it as a necessary measure to retain employees during the pandemic.  (Id. ¶¶ 41, 47.)

On April 9, 2020, Defendant furloughed its employees, including Plaintiff and her entire department.  (Id. ¶ 48.)  On May 1, 2020, Defendant brought many of its employees back to work from furlough, including Plaintiff.  (Id. ¶ 60.)  Plaintiff returned to work, but on May 19, 2020, Defendant informed Plaintiff that it would be dissolving her department and Plaintiff would be terminated from her position with Defendant.  (Id. ¶¶ 63, 68-72.)  At the time of her termination, Plaintiff was 38 weeks pregnant.  (Id. ¶75.)

Plaintiff alleges that Defendant did not in fact eliminate her department, and Defendant did not terminate her employment due to the COVID-19 pandemic.  (Id. ¶¶ 87-88.)  Plaintiff alleges that Defendant terminated her employment due to her pregnancy and her then-impending legally protected maternity leave.  (Id. ¶ 97.)  Plaintiff alleges that Defendant subjected her to pregnancy discrimination and terminated her employment in violation of public policy.  (Id. ¶ 1.)

On October 9, 2020, Plaintiff filed a complaint in federal court against Defendant, alleging claims for: (1) pregnancy discrimination in violation of Title VIII, 42 U.S.C. § 2000e; (2) pregnancy discrimination in violation of FEHA, California Government Code § 12940; (3) failure to prevent discrimination in violation of FEHA; (4) wrong termination in violation of public policy; (5) unfair business practices in violation of California

1   Business and Professions Code § 17200; (6) intentional infliction of emotional distress;

2   and (7) negligent infliction of emotional distress.  (Doc. No. 1, Compl. ¶¶ 106-73.)  On

3   November 24, 2020, Defendant filed an answer to Plaintiff's complaint.  (Doc. No. 5.)  By

4   the present motion, Defendant moves to compel arbitration of Plaintiff's claims and to stay

5   the action pending completion of the arbitration.

**Discussion**

6

7   **I.      Legal Standards**

8          The Federal Arbitration Act ("FAA")[1] permits "[a] party aggrieved by the alleged

9   failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

10   [to] petition any United States District Court . . . for an order directing that . . . arbitration

11   proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  The

12   Supreme Court has explained that the FAA reflects an "emphatic federal policy in favor of

13   arbitral dispute resolution."  KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011).  Upon a

14   showing that a party has failed to comply with a valid arbitration agreement, the district

15   court must issue an order compelling arbitration.  Id.  A party moving to compel arbitration

16   must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2)

17   that the agreement to arbitrate encompasses the dispute at issue."  Ashbey v. Archstone

18   Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted); accord Knutson

19   v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014).

20          Fundamentally, "arbitration is a matter of contract."  Rent-A-Center, West, Inc., v.

21   Jackson, 561 U.S. 63, 67 (2010).  Thus, courts apply state contract law to determine

22   whether a valid arbitration agreement exists, "while giving due regard to the federal policy

23   in favor of arbitration."  Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th

24   Cir. 2014) (international quotation marks and citations omitted); see First Options of

25

26   [1]      The parties do not contest whether the FAA applies to this case.  The FAA governs arbitration
27   agreements in contracts involving transactions in interstate commerce.  9 U.S.C. § 2.  The agreements in
    this case involve interstate commerce because they are employment-related.  See E.E.O.C. v. Waffle
28   House, Inc., 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers
    engaged in transportation, are covered by the FAA.").  Thus, the FAA applies.

1    Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

2         Under California law, which applies here,[2] the movant has the burden to show the

3    existence a valid agreement to arbitrate between the parties by a preponderance of the

4    evidence.  Knutson, 771 F.3d at 565 (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal.

5    4th 394, 413 (1996)).  Additionally, "[a]ny doubts about the scope of arbitrable issues,

6    including applicable contract defenses, are to be resolved in favor of arbitration." Poublon

7    v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v.

8    23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)).  "While the Court may not review

9    the merits of the underlying case in deciding a motion to compel arbitration, it may consider

10   the pleadings, documents of uncontested validity, and affidavits submitted by either party."

11   Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal

12   quotations, citations, and brackets omitted).

13   **II.    Analysis**

14        A.    The Validity and Scope of the Agreement

15        Defendant argues that the Court should compel arbitration of Plaintiff's claims in

16   this action because Plaintiff entered into a valid arbitration agreement with Defendant that

17   covers all of the claims raised in her complaint. (Doc. No. 4-1 at 9-11.)  The evidence in

18   the record shows that at the time of her hire by Defendant, on April 29, 2014, Plaintiff and

19   Defendant executed a Mutual Agreement to Arbitrate Claims ("MAAC"). (Doc. No. 4-3,

20   Ex. 1.)  The terms of the agreement provided in relevant part:

21        In order to avoid the expense of court proceedings, and to obtain the benefit
22        of the expedited process of arbitrating disputes, BELMONT PARK
          ENTERTAINMENT LLC [("Defendant")] and I [("Plaintiff")] understand
23        and agree to be bound by this [Defendant]'s Mutual Agreement to Arbitrate
          Claims (MAAC), as it relates to my application my application for
24        employment with [Defendant]; my new employment with [Defendant]; or if I
25        am already employed my continued employment with [Defendant.]

26

27   _____

28   [2]    The parties agree that California law applies to the agreement at issue. (See, e.g., Doc. No. 4-1 at
     10; Doc. No. 8 at 4.)

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

> [Defendant] and [Plaintiff] both acknowledge that we are giving up certain rights, and gaining certain benefits by entering into this MAAC. . . .
>
> [Defendant] and [Plaintiff] agree that as a condition of my application for employment with [Defendant], my new employment with [Defendant], or if I am already employed my continued employment with [Defendant], that it is my and [Defendant]'s obligation to make use of the MAAC in place of any other type of action, and to submit to final and binding arbitration any and all claims, disputes and controversies that cannot be resolved informally which are related in any way to my application for employment with, my employment with, or termination of my employment with [Defendant], whether based in tort, contract, or provisions of federal or state labor and employment laws.  This includes, but is not limited to, all disputes between employee and [Defendant] . . . any claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the California Fair Employment and Housing Act, federal or state Family Rights laws, as well as any claims asserting wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, negligent or intentional infliction of emotion distress, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, defamation, invasion of privacy, disability, and claims related to wages, including minimum wage, overtime, meals periods, vacation, commissions and bonuses.

16

(Doc. No. 4-3, Ex. 1 at 1.)

17
18
19
20
21
22
23
24
25
26
27
28

In her complaint, Plaintiff alleges claims against Defendant for: (1) pregnancy discrimination in violation of Title VIII; (2) pregnancy discrimination in violation of FEHA; (3) failure to prevent discrimination in violation of FEHA; (4) wrong termination in violation of public policy; (5) unfair business practices in violation of California Business and Professions Code § 17200; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.  (Doc. No. 1, Compl. ¶¶ 106-73.)  These claims are all based on Plaintiff's allegations that Defendant subjected her to pregnancy discrimination and wrongfully terminated her employment.  (See id. ¶ 1.)  Thus, all the claims in this action are related to Plaintiff's employment with and/or termination by Defendant, thereby placing the claims within the scope the MAAC.  (See Doc. No. 4-3 at 1 (covering "any and all claims, disputes and controversies . . . which are related in any way to . . . my employment with, or termination of my employment with [Defendant]").)

20-cv-01991-H-RBB

1    Indeed, most of Plaintiff's causes of action in the complaint are expressly listed in the

2    MAAC.  (See id. (expressly listing "claims arising under Title VII of the Civil Rights Act

3    of 1964, . . . and the California Fair Employment and Housing Act . . . , as well as any

4    claims asserting wrongful termination, . . . [or] negligent or intentional infliction of emotion

5    distress").)

6         In her opposition, Plaintiff acknowledges that she signed the MAAC as a condition

7    of her employment on April 29, 2014.  (Doc. No.8 at 1.) "In the absence of fraud, mistake,

8    or another vitiating factor, a signature on a written contract is an objective manifestation

9    of assent to the terms set forth there."  Rodriguez v. Oto, 212 Cal. App. 4th 1020, 1027

10   (2013).  Further, in her opposition, Plaintiff does not dispute that all her claims in this

11   action are covered by the terms of the MAAC's provisions.  (See Doc. No. 8 at 5.)  Thus,

12   Defendant has established that there is a valid arbitration agreement between itself and

13   Plaintiff that encompasses all the claims at issue.  As such, the Court must compel

14   arbitration of Plaintiff's claims unless the arbitration agreement is unenforceable.

15        B.    Enforceability of the Agreement

16        Plaintiff argues that the MAAC is unenforceable under California law because the

17   agreement is unconscionable.  (Doc. No. 8 at 5-10.)  In California, a court may refuse to

18   enforce a contract that "was unconscionable at the time it was made."  Cal. Civ. Code §

19   1670.5.  "[U]nconscionability has both a procedural and a substantive element . . . ."

20   Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) (internal

21   quotation marks omitted) (citation omitted).  Both must be present for a court to refuse to

22   enforce a contract, but they need not be present to the same degree. Id. In assessing

23   unconscionability, courts use a sliding scale whereby "the more substantively oppressive

24   the contract term, the less evidence of procedural unconscionability is required to come to

25   the conclusion that the term is unenforceable, and vice versa."  Id.

26        "The party asserting that a contractual provision is unconscionable bears the burden

27   of proof."  Tompkins, 840 F.3d at 1023 (citing Sanchez v. Valencia Holding Co., LLC, 61

28   Cal. 4th 899, 911 (2015)); see also Poublon, 846 F.3d at 1260 ("Under California law, "the

1  party opposing arbitration bears the burden of proving any defense, such as
2  unconscionability.'"").   The Court addresses Plaintiff's procedural and substantive
3  unconscionability arguments in turn below.

4               1.     Procedural Unconscionability

5       "Procedural unconscionability focuses on oppression or surprise due to unequal
6  bargaining power." Baxter v. Genworth N. Am. Corp., 16 Cal. App. 5th 713, 722 (2017)
7  (internal quotation marks omitted) (citing Armendariz, 24 Cal. 4th at 114).  "Oppression
8  arises from an inequality of bargaining power that results in no real negotiation and an
9  absence of meaningful choice.  Surprise involves the extent to which the supposedly
10  agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to
11  enforce them." Id.

12       Plaintiff argues that the MAAC is procedurally unconscionable because Defendant
13  conditioned Plaintiff's employment on her entering into the agreement, and, thus, the
14  agreement constitutes a contract of adhesion. (Doc. No. 8 at 6-7.)  A contract of adhesion
15  is "a standardized contract, which, imposed and drafted by the party of superior bargaining
16  strength, relegates to the subscribing party only the opportunity to adhere to the contract or
17  reject it." Armendariz, 24 Cal. 4th at 113.  California courts have held that an arbitration
18  agreement that is executed as a "condition of employment" is an adhesion contract and is
19  "procedurally unconscionable." Martinez v. Master Prot. Corp., 118 Cal. App. 4th 107,
20  114 (2004); see Carbajal v. CWPSC, Inc., 245 Cal. App. 4th 227, 243 (2016) ("It is well
21  settled that adhesion contracts in the employment context, that is, those contracts offered
22  to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural
23  unconscionability.").

24       Nevertheless, "many courts have found that the take-it-or-leave-it employment
25  contract scenario results in a minimal degree of procedural unconscionability." Vigueras
26  v. Red Robin Int'l, Inc., No. SACV1701422JVSDFMX, 2019 WL 1425887, at *4 (C.D.
27  Cal. Feb. 21, 2019) (collecting cases); see Davis v. Kozak, 53 Cal. App. 5th 897, 907 (2020)
28  ("[A]dhesion establishes only a 'low' degree of procedural unconscionability.").  The

20-cv-01991-H-RBB

1  Ninth Circuit has explained:

2          While California courts have found that "the adhesive nature of the contract
3          is sufficient to establish some degree of procedural unconscionability" in a
            range of circumstances, the California Supreme Court has not adopted a rule
4          that an adhesion contract is per se unconscionable.  In the employment
5          context, if an employee must sign a non-negotiable employment agreement as
            a condition of employment but "there is no other indication of oppression or
6          surprise," then "the agreement will be enforceable unless the degree of
7          substantive unconscionability is high."

8  Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1261 (9th Cir. 2017) (citations omitted);

9  see Serpa v. California Sur. Investigations, Inc., 215 Cal. App. 4th 695, 704 (2013).

10         Here, Plaintiff is correct that the MAAC constitutes an adhesion contract because

11  under its express terms, Plaintiff was required to agree to the MAAC as a condition of her

12  employment with Defendant.  (See Doc. No. 4-3, Ex. 1 at 1 ("BELMONT PARK

13  ENTERTAINMENT LLC and I agree that as a condition of . . . my new employment . . .

14  ."); see also Doc. No. 4-1 at 1.)  Nevertheless, this fact alone only results in a minimal

15  degree of procedural unconscionability.  See Vigueras, 2019 WL 1425887, at *4; Davis,

16  53 Cal. App. 5th at 907.  Absent other indications of oppression or surprise, the agreement

17  is enforceable "unless the degree of substantive unconscionability is high."  Poublon, 846

18  F.3d at 1261; see Serpa, 215 Cal. App. 4th at 704.

19         Plaintiff also argues that the MAAC is procedurally unconscionable because

20  Defendant failed to provide Plaintiff with a copy of the JAMS employment rules.  (Doc.

21  No. 8 at 7-8.)  Plaintiff argues that California courts have routinely held that a failure to

22  provide the employee with a copy of the relevant arbitration rules renders the agreement

23  procedurally unconscionable.  (Id. at 7.)

24         The Court acknowledges that several California courts "have held that the failure to

25  provide a copy of the arbitration rules to which the employee would be bound, supported

26  a finding of procedural unconscionability."  Carbajal v. CWPSC, Inc., 245 Cal. App. 4th

27  227, 244 (2016) (collecting cases) (internal quotation marks omitted).  However, the

28  holdings in these cases have been narrowed by the California Supreme Court's subsequent

decision in Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1241 (2016).  A recent opinion by the California Court of Appeal in Davis v. Kozak, 53 Cal. App. 5th 897 (2020), provides an explanation of the interaction between Baltazar and those prior cases as follows:

> [T]he full scope of Carbajal's procedural unconscionability rationale is in question after the Supreme Court issued its decision in Baltazar, shortly after Carbajal was published.  In Baltazar, the Supreme Court held that the failure to provide a copy of the arbitral rules, standing alone, does not heighten the degree of procedural unconscionability.  Baltazar noted that in the cases where the failure to provide the arbitral rules supported a finding of procedural unconscionability, the "claim depended in some manner on the arbitration rules in question.  These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement."
>
> It logically follows from Baltazar that a viable claim of procedural unconscionability for failure to identify the particular version of the applicable arbitral rules—like a claim for failure to attach the rules themselves—depends in some manner on the substantive unfairness of a term or terms contained within the unidentified version of the rules applicable to the dispute.  That is, if the unidentified rules are not themselves substantively unfair, then the employer cannot be faulted for vaguely referring to such rules.

Davis, 53 Cal. App. 5th at 909; see also Pereyra v. Guaranteed Rate, Inc., No. 18-CV-06669-EMC, 2019 WL 2716519, at *5 (N.D. Cal. June 28, 2019) ("Absent a showing that one of the AAA rules somehow surprised her, the failure to provide Plaintiff with a copy of the AAA rules or to specify which of the then existing AAA rules governed does not amount to any procedural unconscionability, at least where none of the AAA rules are challenged.").  Thus, Plaintiff's assertion of procedural unconscionability based on Defendant's failure to provide her with the relevant rules turns on whether the JAMS rules are themselves substantively unconscionable.

### 2. Substantive Unconscionability

"The substantive element of the unconscionability analysis focuses on overly harsh or one-sided results." Baxter v. Genworth N. Am. Corp., 16 Cal. App. 5th 713, 724 (2017).  "In assessing substantive unconscionability, [courts] look to the terms of the parties'

1  agreement to ensure[ ] that contracts, particularly contracts of adhesion, do not impose

2  terms that have been variously described as overly harsh, unduly oppressive, so one-sided

3  as to shock the conscience." <u>Davis</u>, 53 Cal. App. 5th at 910 (citations and internal quotation

4  marks omitted) (quoting <u>Sonic-Calabasas A, Inc. v. Moreno</u>, 57 Cal. 4th 1109, 1145

5  (2013)).  "Although California courts have characterized substantive unconscionability in

6  various ways, [a]ll of these formulations point to the central idea that unconscionability

7  doctrine is concerned not with 'a simple old-fashioned bad bargain' but with terms that are

8  'unreasonably favorable to the more powerful party.'"    <u>Tompkins</u>, 840 F.3d at 1023

9  (internal quotation marks omitted)); <u>see</u> <u>Sanchez</u>, 61 Cal. 4th at 911; <u>Davis</u>, 53 Cal. App.

10 5th at 910.

11        Plaintiff argues that the MAAC is substantively unconscionable because the filing

12 fee provision contained in the agreement does not afford Plaintiff the opportunity to obtain

13 a fee waiver.  (Doc. No. 8 at 8-9.)  Plaintiff argues that no provision in the MAAC or the

14 JAMS employment rules provide for a fee-waiver in the event of an employee's indigent

15 status or inability to pay the filing fee.  (<u>Id.</u> at 9.)  Plaintiff notes that, in contrast, in federal

16 courts, indigent plaintiffs may be exempt from paying court fees.  (<u>Id.</u> at 8-9.)

17        "In the context of mandatory employment arbitration of unwaivable statutory rights,

18 [the California Supreme Court] ha[s] held that [an] arbitration agreement 'cannot generally

19 require the employee to bear any type of expense that the employee would not be required

20 to bear if he or she were free to bring the action in court.'"  <u>Sanchez</u>, 61 Cal. 4th at 918

21 (quoting <u>Armendariz</u>, 24 Cal. 4th at 124).  Here, the MAAC provides: "I also acknowledge

22 that BELMONT PARK ENTERTAINMENT LLC agrees that in arbitration my maximum

23 out-of-pocket expenses for the arbitrator and the administrative costs of JAMS will be an

24 amount no more than that equal to the local civil court filing fee were such action to have

25 been filed in court, and that BELMONT PARK ENTERTAINMENT LLC will pay all of

26 the remaining fees and administrative costs of the arbitrator and JAMS."  (Doc. No. 4-2,

27 Ex. 1 at 2.)  By providing that the employee, here Plaintiff, will not bear costs greater than

28

1  the filing fee she would pay if she were to bring the action in court, the express terms of

2  the MAAC track the holdings set forth in <u>Sanchez</u> and <u>Armendariz</u>,

3       Plaintiff notes that unlike federal courts, the JAMS employment rules do not provide

4  for a fee waiver based on indigent status.  But even assuming this is correct, it is not clear

5  that Plaintiff would not be entitled to a fee waiver upon proof of indigent status.  The

6  MAAC states that Plaintiff will pay no more in JAMS costs "than that equal to the local

7  civil court filing fee were such action to have been filed in court." (Doc. No. 4-2, Ex. 1 at

8  2.)  Thus, if Plaintiff were able to prove that she would be entitled to a fee waiver due to

9  her indigent status had she brought her claims in federal court, it would appear that this

10  provision of the MAAC would allow Plaintiff to be able to obtain the benefit of that fee

11  waiver in the arbitration.

12       In addition, the Court notes that Plaintiff has made no showing that she indeed

13  would be entitled to a fee waiver in federal court due to her indigent status.  Importantly,

14  the Court notes that when Plaintiff filed the present action in this Court, Plaintiff did not

15  seek a fee waiver by filing a motion to proceed in forma pauperis.  Rather, Plaintiff paid

16  the full filing fee.  (<u>See</u> Doc. No. 1.)  As such, Plaintiff's substantive unconscionability

17  argument fails, and Plaintiff has failed to make any showing of substantive

18  unconscionability as to the MAAC.

19          3.    <u>Conclusion</u>

20       Plaintiff has shown only a minimal degree of procedural unconscionability, and

21  Plaintiff has failed to make any showing of substantive unconscionability.  As such the

22  MAAC is enforceable.  <u>See</u> <u>Poublon</u>, 846 F.3d at 1261; <u>see also</u> <u>Mohamed v. Uber Techs.,</u>

23  <u>Inc.</u>, 848 F.3d 1201, 1210 (9th Cir. 2016) (explaining that "[b]oth substantive and

24  procedural unconscionability must be present in order for a court to find a contract

25  unconscionable" (citing <u>Armendariz</u>, 24 Cal. 4th at 114)).  In sum, Defendant has shown

26  that there is a valid arbitration agreement between itself and Plaintiff that covers all of the

27  claims in this action, and Plaintiff has failed to show that the agreement is unenforceable.

28  As a result, the Court grants Defendant's motion to compel arbitration of Plaintiff's claims

1 | in this action.

2 | **III.    Defendant's Request to Stay the Action**

3 | In its motion, Defendant requests that the Court stay the action pending completion

4 | of the arbitration.  (Doc. No. 4-1 at 11.)  Section 3 of the FAA provides the following:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

"The Ninth Circuit has held, however, that § 3 does not impose a mandatory duty to stay on district courts.  Even when a party seeks a stay under § 3, the court has discretion to dismiss the case if it concludes that all the claims before it are arbitrable."  Erickson v. Endurance Am. Specialty Ins. Co., No. 12-CV-01703-H-MDD, 2012 WL 13175882, at *3 (S.D. Cal. Aug. 21, 2012) (citations omitted); see Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1073-74 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." (citation omitted)); see, e.g., Thinket Ink Info. Res. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal under Rule 12(b)(6) when all claims were subject to arbitration); Delgado v. Ally Fin., Inc., No. 17-CV-02189-BEN-JMA, 2018 WL 2128661, at *6 (S.D. Cal. May 8, 2018) ("Having decided that all of [the] claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12(b)(6).").

Here, all of Plaintiff's claims in the action are subject to the arbitration agreement at issue.  Therefore, because no claims remain to be litigated in this Court, the Court, in its discretion, dismisses the action.  See Johnmohammadi, 755 F.3d at 1073-74; Thinket Ink, 368 F.3d at 1060.  The parties, of course, are free to move to re-open the case to confirm the arbitration award at the appropriate time.

///

1

## Conclusion

2        For the reasons above, the Court grants Defendant's motion to compel arbitration.

3   Specifically, the Court compels Plaintiff to submit her claims against Defendant in this

4   action to arbitration.  The Court subsequently dismisses the action and directs the Clerk to

5   close the case.

6        **IT IS SO ORDERED.**

7   DATED: January 13, 2021

8                                                      MARILYN L. HUFF, District Judge
9                                                      UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20-cv-01991-H-RBB